**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DONALD DEPRIEST**                                                                            **PLAINTIFF**

**v.**                                    **No. 1:10CV177-P-D**

**PETER S. HARMER**                                                  **DEFENDANT**

**ORDER STAYING CASE UNTIL THE CONCLUSION OF
THE INVESTIGATION BY THE FEDERAL COMMUNICATIONS
COMMISSION OF MARITIME COMMUNICATIONS/LAND MOBILE, LLC
EB DOCKET NO. 11-71; FCC 11-64**

This matter comes before the court on the complaint of plaintiff Donald DePriest against defendant Peter S. Harmer for defamation, tortious interference with business relations, and intentional infliction of emotional distress. Mr. Harmer seeks dismissal of the instant complaint on several grounds: violation of the discharge order entered at the conclusion of Mr. Harmer's Chapter 7 bankruptcy proceeding; improper venue; and, as set forth in Exhibit B to his motion to dismiss, the merits of the issues in this case.[1] For the reasons set forth below, the court will, *sua sponte,* stay the proceedings until the conclusion of an investigation the Federal Communications Commision ("FCC") is currently conducting regarding, among other things, the role that plaintiff Donald DePriest played in the ownership, control, and management of Maritime Communications/Land Mobile, LLC ("Maritime") and MCT Corp. ("MCT"), the value of MCT Corp. as an asset, the candor with which Maritime – and its principals – approached the FCC regarding licensing and receipt of bidding credits, and other issues.

---

[1]Under the holding of *Haines v. Kerner*, 404 U.S. 519 (1972) (requiring liberal interpretation of a *pro se* litigant's filings), the court has construed the *pro se* defendant's Exhibit B broadly – and considers the exhibit as part of the merits of the defendant's motion to dismiss.

Mr. DePriest's role within MCT Corp. – as well as the business plan, business decisions, and transactions of MCT Corp. and its principals – play a large role in the resolution of the issues in the present case – including whether MCT Corp. operated as a Ponzi scheme, and whether Mr. DePriest has committed fraud related to these and other matters.[2] These issues arise from both the claims in Mr. DePriest's complaint and claims and defenses in Mr. Harmer's pending motion to dismiss.[3]

## Judicial Notice

Under FED. R. EV. 201, the court will take judicial notice that the FCC has initiated an investigation regarding, *inter alia*, DePriest's role within MCT Corp., the value of MCT Corp., as well as his candor with the FCC tribunal.[4] The rule reads, in relevant part:

**(a)** **Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

**(b)** **Kinds of Facts.** *A judicially noticed fact must be one not subject to reasonable dispute in that it is* either (1) generally known within the territorial jurisdiction of the trial court or (2) *capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.*
. . .

**(e)** **Opportunity to be heard.** *A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.*

**(f)** **Time of taking notice.** Judicial notice may be taken at any stage of the

---

[2]Mr. DePriest claims that Mr. Harmer told a third party that DePriest was "a fraud" and operated MCT Corp. as a Ponzi scheme. Mr. Harmer has sought to show in his motion to dismiss that these characterizations are truthful – a defense to various claims in the complaint.

[3]Mr. Harmer has referred to the FCC investigation in his pleadings and motions – and has requested a stay in the proceedings pending more complete and straightforward discovery responses from Mr. DePriest.

[4]The Show Cause Order issued by the FCC is attached to this order as an exhibit.

proceeding.

FED. R. EV. 201 (emphasis added).

The court may not, as yet, take judicial notice of the *findings* of the FCC regarding these issues[5]; the court *may*, however, take judicial notice (1) that such proceedings are underway, and (2) the issues the tribunal wishes to resolve. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994) (a court "may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"). If either party wishes to be heard regarding the propriety of judicial notice of these facts, he may request briefing on that issue. FED. R. EV. 12(e). On the other hand, "[Although] courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein[,] . . . it is conceivable that a finding of fact may satisfy the indisputability requirement of FED. R. EV. 201(b)." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997). If any of the factual findings of the FCC prove to be both relevant to this case and beyond legitimate dispute under Rule 201(b)(2), then the court may take judicial notice of those facts.

## Stay of Judicial Proceedings

Trial courts have broad discretion in deciding whether to stay a proceeding. *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir.1983). Part of a district court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" is "the power to stay proceedings." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). An order staying a proceeding generally does not constitute a final decision from which a litigant may appeal unless it puts the plaintiff "effectively out of court."

---

[5]For one thing, the FCC has made no factual determinations at this juncture.

-3-

*See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 10 & n. 11, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). That is simply not the case in the present proceeding. The existence of the FCC investigation centering on Donald DePriest's involvement with MCT Corp. and other businesses is well-documented. *See* Attached Exhibit. The court readily found the document at the following official government web address: *www.gpo.gov/fdsys/pkg/ FR-2011-05-24/pdf/2011-12792.pdf.* As such, the existence of the FCC investigation is not in legitimate dispute, and it is "capable of accurate and ready determination by resort to" the official website of the Government Printing Office of the United States. FED. R. EV. 201(b)(2). Likewise, the issues the FCC wishes to resolve through the investigation are set forth in detail in the Notice and Show Cause order from pages 30161 through 30166.

However, "before granting a stay pending resolution of another case, the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir.1983) (citing *McKnight v. Blanchard,* 667 F.2d 477, 479 (5th Cir.1982)). The FCC set a deadline of June 13, 2011 (May 24, 2011 + 20 days), for Maritime to file an appearance to present evidence at a hearing of the matters under investigation. Exhibit A, p. 30167. The time and place of the FCC hearing have not yet been determined, but will be set by separate order. Exhibit A, p. 30166. The terse tone and timbre of the FCC show cause order, however, give the court confidence that the FCC hearing will be held in a timely fashion.

Nonetheless, to ensure that the present case does not languish should the FCC proceeding draw out interminably, the court directs Mr. Depriest and Mr. Harmer to present written reports to the court every ninety days regarding the progress of the FCC investigation. In that way, the

court can periodically reconsider the propriety of the stay in light of events as they unfold.

**Reasons for Staying the Proceedings**

The court will stay this case for several reasons. First, the issues in the FCC investigation overlap significantly with those in the present case, and, given the resources at the FCC's disposal, a great deal of documentary evidence regarding those issues will likely come to light and, should such evidence be found admissible, be available to assist the trier of fact in this case. Second, several aspects of the present litigation trouble the court. It appears that, although the initial statements giving rise to the instant litigation "go[] back as far as 2005," Mr. DePriest chose not to file suit against Mr. Harmer until July 16, 2010 – a short time *after* the FCC's Wireless Telecommunications Bureau referred the Maritime case to the Enforcement Bureau for investigation in late 2009 – and an even *shorter* time after the Enforcement Bureau sent a Letter of Inquiry to Maritime on February 26, 2010. The court has no knowledge regarding whether Mr. Harmer was or is giving information or sworn testimony to the FCC regarding Mr. DePriest, MCT Corp., or anything else, or when he might have done so. The reason for the delay of some five years in filing the suit is unclear, but the court cannot help but notice that it coincides with the investigation conducted by the FCC's Enforcement Bureau.

Another of the court's concerns is the nebulous nature of the allegations against Mr. Harmer regarding precisely to whom Mr. Harmer spoke, what he said, when he said it, how it damaged Mr. DePriest, and how Mr. DePriest determined the damage to be $20 million. This ambiguity is puzzling because such information goes to the heart of Mr. DePriest's allegations against Mr. Harmer.

The court is also concerned about Mr. DePriest's obvious reluctance to provide this information in discovery. For example, when Mr. Harmer has sought more specific information

regarding these and other relevant issues in discovery, Mr. DePriest has objected – in the vaguest of terms – to revealing that information. Mr. Harmer's discovery requests are not seeking every "jot and tittle" regarding the plaintiff's claims; indeed, such information is crucial to the allegations in the complaint (defamation, tortious interference with business relations, and intentional infliction of emotional distress). In this case, Mr. DePriest has adopted a pattern of responding to Mr. Harmer's discovery only after Harmer seeks relief from this court by way of motions to compel.[6] Also, Mr. DePriest failed – even after repeated calls from court staff – to provide Mr. Harmer with copies of the plaintiff's pleadings and motions filed in this court. As a *pro se* litigant, Mr. Harmer does not receive copies of other parties' filings automatically through email; he must receive them through the United States Postal Service. Members of the court's staff notified Mr. DePriest of this fact on multiple occasions, yet it took an order from this court directing Mr. DePriest to do what is already required under the rules to get him, finally, to serve Mr. Harmer with copies of the documents filed.[7] Furthermore, Mr. DePriest is seeking $20 million in damages from a person he knows is insolvent. The pendency of the present FCC investigation (involving a substantial number of issues relevant to the present case), Mr. DePriest's seeming lack of desire to move forward with his case through expeditious and complete responses to discovery, his alleged pattern of obfuscation in the FCC proceeding, the apparent insolvency of the defendant (making recovery of even a fraction of the damages sought

---

[6]Only Mr. Harmer's unfamiliarity with the Federal Rules of Civil Procedure (and the court's local rules) has prevented the court, before now, from addressing the merits of Mr. Harmer's several motions to compel discovery.

[7]One of the issues in the FCC's Show Cause Order is "whether Maritime and its principals engaged in a pattern of deception and misinformation carefully designed to obtain and conceal an unfair economic advantage over competing auction bidders . . . ." The economic advantage mentioned is a bidding credit of $2,737,000 – money Maritime, upon a showing that it is a very small business, would not have to pay in an FCC auction radio spectrum.

remote, at best) – and other matters – give rise to questions regarding Mr. DePriest's motivations in filing the suit in the first place. A stay of the present case until after the conclusion of the FCC investigation may alleviate at least some of the court's concerns regarding the filing and prosecution of the instant case.

For these reasons, the present case is **STAYED** pending the resolution of the investigation by the FCC into the relationship between Maritime, MCT Corp. and Donald DePriest, his candor in his interactions with the FCC, and other issues. In addition, both parties are **DIRECTED** to file a written report with this court every ninety days regarding the status of the FCC investigation, including (1) whether Mr. Harmer has been or will be a witness for the FCC; (2) the date and time of any hearings arising out of the FCC investigation; and (3) the resolution of the issues in any hearing involving these matters.

As a final matter, given Mr. Harmer's presentation of voluminous documents outside the pleadings in his motion to dismiss, the court will treat the motion under FED. R. CIV. P. 12(b) as one seeking summary judgment under FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(d). As a result, upon the lifting of the stay in this case, both parties will be given a chance to seek additional discovery in this case – and "to present all the material that is pertinent to the motion." *Id.*

**SO ORDERED,** this the 15th day of June, 2011.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE